UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **UNIVERSITY SPINE CENTER**, on assignment of Vincent B., <br><br>*Plaintiff*, <br><br>v. <br><br>**HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY, et al.**, <br><br>*Defendants*. | Civil Action No. 16-9253 <br><br> OPINION |

**ARLEO, UNITED STATES DISTRICT JUDGE**

**THIS MATTER** comes before the Court on Defendant Anthem Blue Cross Blue Shield of California's ("Anthem" or "Defendant") motion to dismiss Plaintiff University Spine Center's ("USC" or "Plaintiff") Complaint.[1] ECF No. 9. For the reasons set forth below, the motion is **GRANTED** in part and **DENIED** in part.

**I.   BACKGROUND**[2]

In this lawsuit under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"), USC contends that Anthem failed to properly reimburse it for services rendered to Vincent B. ("Vincent B."), who assigned his benefits to USC.

The facts of this case are straightforward. From August 27, 2015 to May 11, 2016, Vincent B. received services, including surgical procedures, from out-of-network medical provider USC.

---

[1] Defendant Horizon Blue Cross Blue Shield of New Jersey ("Horizon") filed a motion for judgment on the pleadings, ECF No. 10, but was thereafter voluntarily dismissed from the case, ECF No. 19. Anthem and Horizon will together be referred to as "Defendants."

[2] The following facts are drawn from the Complaint, and are taken as true for the purposes of this motion. ECF No. 1-1.

Compl. ¶¶ 1, 5-6.  Thereafter, USC obtained an assignment of benefits from Vincent B.  Id. ¶ 7. Pursuant to the assignment, USC prepared a Health Insurance Claim Form, demanding reimbursement from Defendants in the amount of $611,029.00.  Id. ¶ 8.  Defendants only paid $8,201.87.  Id. ¶ 9.

USC engaged, at least in part, in Defendants' administrative appeals process, but was unsuccessful in obtaining the full amount sought.  Id. ¶¶ 10-12.  USC now alleges that Defendants' reimbursement amounted to an underpayment of $602,827.13.  Id. ¶ 14.  To that end, the Complaint asserts four causes of action: (1) breach of contract; (2) improper denial of benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(l)(B); (3) breach of fiduciary duty and co-fiduciary duty under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), and ERISA § 405(a), 29 U.S.C. § 1105(a); and (4) failure to establish or maintain reasonable claims procedures under 29 C.F.R. 2560.503-1, a Department of Labor regulation promulgated pursuant to 29 U.S.C. § 1133.  See Compl. ¶¶ 16-48.

On January 26, 2017, Anthem filed the instant motion to dismiss.  Anthem argues, among other things, that USC does not have standing because Vincent B.'s assignment of benefits was barred by the Plan's anti-assignment clause; USC failed to exhaust administrative remedies; its breach of contract claim is preempted by ERISA; its breach of fiduciary duty claim is duplicative of its denial of benefits claim; there is no private right of action under 29 C.F.R. 2560.503-1; and USC's demand for a jury trial must be stricken because there is no right to a jury trial under ERISA. Each will be discussed in turn.

## II. LEGAL STANDARD

In considering a motion to dismiss, the Court accepts as true all of the facts in the complaint and draws all reasonable inferences in favor of the nonmoving party. Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). Dismissal is inappropriate even where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." Id. at 231. However, the facts alleged must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Therefore, a complaint will survive a motion to dismiss if it provides a sufficient factual basis such that it states a facially plausible claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## III. ANALYSIS

### A. Standing

Anthem first argues that USC does not have standing to assert claims on behalf of Vincent B. because the purported assignment of benefits is barred by the Plan's anti-assignment provision, which prohibits assignment except to "the provider of services and supplies which qualify as Eligible Charges for payment of such Eligible Charges." Anthem maintains that the services provided to Vincent B. were not "Eligible Charges." USC counters by arguing that the anti-assignment clause is unenforceable as a matter of public policy, the clause is ambiguous, Anthem waived application of the provision, and discovery is needed to determine whether the services qualified as "Eligible Charges." Because the Court cannot conclude at this time that the anti-assignment clause is unambiguous, Anthem's motion will be denied on this basis.[3]

---

[3] Although the Court will deny the motion due to the questions raised regarding the anti-assignment clause's ambiguity, the parties may also take discovery on the additional fact-sensitive issues of waiver and whether the services qualified as "Eligible Charges." See Drzala v. Horizon Blue Cross

3

USC argues that the anti-assignment clause cannot be enforced because it is ambiguous. The anti-assignment clause provides as follows:

> Benefits payable under this Plan shall not be assignable or transferable in any manner nor shall they be subject to attachment, garnishment, or any other legal process except that a Covered Participant may assign benefits under this Plan to the provider of services and supplies which qualify as Eligible Charges for payment of such Eligible Charges.

Plan § 11.1. The Plan defines "Eligible Charges" as such:

> Eligible Charges are charges actually incurred by a Covered Participant, and for which he is required to pay, for the following services and supplies which are ordered by a Practitioner on account of Illness of such a covered individual, subject to the provisions of this Plan, including, but not limited to, Section 3.4 and Section 1.16 of this Exhibit A, Generally Excluded Charges and Excluded Charges, respectively. All such charges must be eligible pursuant to the Guidelines.

Id. § 1.1. More specifically, the provision Anthem invokes as the basis for excluding Vincent B.'s services as "Eligible Charges," states that the following charges will be "Excluded":

> Charges above the amount considered appropriate for the service provided in the geographic area according to the Guidelines.

Id. § 1.16(l); see also Def.'s Br. at 3-4. The Plan defines "Guidelines" as such:

> Guidelines shall mean coverage criteria determined by the Claims Paying Administrator as they currently exist and may be changed from time to time and which are incorporated by reference herein.

---

Blue Shield, No. 15-8392, 2016 WL 2932545, at *1 n.2 (D.N.J. May 18, 2016). As to USC's other arguments, the Court is unpersuaded. First, anti-assignment clauses in health benefit plans are enforceable, even when the patient assigns a post-loss claim. Univ. Spine Ctr. v. Horizon Blue Cross Blue Shield of New Jersey, No. 16-8222, 2017 WL 2560345, at *5 (D.N.J. June 13, 2017); IGEA Brain & Spine, P.A. v. Blue Cross & Blue Shield of Minnesota, No. 16-5844, 2017 WL 1968387, at *2 n.3 (D.N.J. May 12, 2017). And second, despite USC's contentions, an anti-assignment clause can be enforced against the provider of the services that the Plan is maintained to furnish. Univ. Spine Ctr., 2017 WL 2560345, at *5; Am. Orthopedic & Sports Med. v. Indep. Blue Cross, LLC, No. 16-8988, 2017 WL 1243147, at *3 (D.N.J. Feb. 24, 2017).

Plan § 1.1(dd). Neither party has provided any guidance as to the coverage criteria utilized by the Claims Paying Administrator, other than a conclusion made by Anthem after the services were rendered that the amount sought by USC was "above the amount considered appropriate for the service provided in [the] geographic area according to [the] Medical Plan administrator's guidelines." Genovese Decl. Ex. B.

USC maintains that although the anti-assignment clause appears unambiguous on its face, its reference to "Eligible Charges" is problematic because the reader is taken on a "wild-goose chase," which makes it "almost impossible to decipher" what constitutes an Eligible Charge. Opp'n at 9. On this limited record, the Court agrees. The anti-assignment clause forces the reader to undertake a Russian-nesting-doll-like inquiry, where each provision reveals yet another term or exception defined elsewhere in the Plan. And when the reader finally reaches the ostensible end of this multi-step inquiry, there is still no clear answer as to what constitutes an "Eligible Charge." Instead, the reader arrives at a definition of "Guidelines" that not only refers to "coverage criteria" that is apparently contained outside the four corners of the Plan, but is also subject to change "from time to time." The reader is therefore left guessing as to what charges and services may render benefits unassignable. Cf. Drzala, 2016 WL 2932545, at *4 ("Because the term 'generally' necessarily implies exceptions, and the reader of the plan is left guessing as to what those exceptions are, the Court does not find this [anti-assignment] clause unambiguous as a matter of law."). At this early procedural stage, the Court simply cannot conclude that the anti-assignment clause is unambiguous as a matter of law, and thus will not dismiss due to a lack of standing at this time.[4]

---

[4] The Court also notes that the anti-assignment clause itself seems to necessitate a conclusion on the merits of the case. To evaluate whether Vincent B.'s assignment was permissible, the Court must first assess whether the services qualified as Eligible Charges, which requires the Court to

### B. Exhaustion of Administrative Remedies

Anthem also contends that USC failed to exhaust administrative remedies because it did not timely complete Anthem's internal review procedures. Since it is unclear whether Anthem complied with regulations that require it to provide certain information to the claimant about internal review procedures, the Court will not dismiss the Complaint on this basis at this time.

Generally, a plaintiff may only bring an action to recover benefits under an ERISA plan after the plaintiff has exhausted the remedies available under the plan. Mallon v. Trover Sols. Inc., 613 F. App'x 142, 143 (3d Cir. 2015) (citing Harrow v. Prudential Ins. Co. of Am., 279 F.3d 244, 252 (3d Cir. 2002)). Because failure to exhaust is a "nonjurisdictional affirmative defense," Metro. Life Ins. Co. v. Price, 501 F.3d 271, 280 (3d Cir. 2007), a plaintiff is "not required to plead facts showing that he exhausted his remedies," Deblasio v. Cent. Metals, Inc., No. 13-5282, 2014 WL 2919557, at *3 (D.N.J. June 27, 2014). However, "the facts that *are* pled may be considered if they definitively establish that remedies were not exhausted." Lewis-Burroughs v. Prudential Ins. Co. of Am., No. 14-1632, 2015 WL 1969299, at *4 (D.N.J. Apr. 30, 2015) (emphasis in original).

USC argues that Anthem cannot enforce the Plan's time limits for internal appeals because it failed to provide notice of the applicable time limits in its adverse benefit determination notifications. Under 29 C.F.R. § 2560.503-1(g)(1)(iv), the plan administrator must provide, in an adverse benefit determination, a "description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review." The

---

consider whether the charges were "above the amount considered appropriate for the service." Plan § 1.16(l). In effect, then, the Court must determine whether Anthem inadequately reimbursed USC for the services provided, which appears to be the primary issue in this case. Even if the clause was unambiguous, this inquiry is simply not possible or appropriate at this early stage.

regulation further provides that "in the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies . . . ." 29 C.F.R. § 2560.503-1(l)(1).

The Court agrees with USC that if Anthem failed to provide the information required by the regulations, the time limits on Anthem's internal appeals will not be enforced against USC. See Campbell v. Sussex Cty. Fed. Credit Union, 602 F. App'x 71, 75 (3d Cir. 2015) (holding that the claimant was not required to exhaust administrative remedies where the administrator failed to notify the claimant of, among other things, "the time limits for requesting a review"); Epright v. Envtl. Res. Mgmt., Inc. Health & Welfare Plan, 81 F.3d 335, 342 (3d Cir. 1996) (stating that "[w]hen a letter terminating or denying Plan benefits does not explain the proper steps for pursuing review of the termination or denial, the Plan's time bar for such a review is not triggered"); Kegel v. Brown & Williamson Tobacco Corp., No. 06-0093, 2009 WL 3125482, at *2 (D. Nev. Sept. 24, 2009) (holding that where an adverse benefit determination "failed to provide . . . the time limits applicable to [administrative appeal] procedures, the letter violated the requirements set forth in 29 C.F.R. § 2560.503–1(g) . . . [and] Plaintiff is 'deemed to have exhausted his administrative remedies available under the plan'"); cf. Mirza v. Ins. Adm'r of Am., Inc., 800 F.3d 129, 134 (3d Cir. 2015) (declining to limit the requirements of § 2560.503–1(g)(1)(iv) to administrative review procedures, and holding that the plan administrator must also inform a claimant of a plan-imposed deadline for bringing a civil action, because for "any . . . review procedure, the administrator must disclose the plan's applicable time limits").[5]

---

[5] Anthem decries the effect of such a rule, complaining that "[u]nder Plaintiff's theory, a member could have, as a default, six years to file an administrative appeal," and that for this reason, "common sense weighs against Plaintiff's argument." Reply at 12. This contention is unavailing. As an initial matter, the six-year statute of limitations provided as a remedy in Mirza—in which the Third Circuit analyzed a plan administrator's failure to inform a claimant of a plan-imposed

7

At this early procedural stage, without the benefit of discovery, the Court cannot determine whether Anthem actually violated 29 C.F.R. § 2560.503-1(g)(1)(iv),[6] and thus cannot dismiss USC's claims due to a failure to exhaust administrative remedies at this time. Anthem may renew its exhaustion arguments in a subsequent motion for summary judgment, after discovery has been taken on the relevant issues.

**C. Count I: Breach of Contract**

Anthem argues that USC's breach of contract claim must be dismissed because it is preempted by ERISA. USC has agreed to dismissal of this claim. See Opp'n at 4. Count I is therefore dismissed.

**D. Count III: Breach of Fiduciary Duty**

Next, Anthem argues that Count III, which asserts a breach of fiduciary duty claim primarily under Section 502(a)(3), must be dismissed because it is duplicative of Count II, which

---

deadline *for bringing a civil action*—is simply irrelevant to this situation. See Mirza, 800 F.3d at 134-35. Where a plan administrator fails to include required information about *internal review processes*, as is the allegation here, the regulation specifically provides that the appropriate remedy is for the claimant to be deemed as having exhausted administrative remedies. See 29 C.F.R. § 2560.503-1(l)(1). Moreover, despite Anthem's protestations, it is quite easy for plan administrators to avoid this fate. As the Third Circuit has noted, the regulation "imposes a trivial burden on plan administrators," which is "to inform claimants of deadlines for . . . review in the documents claimants are most likely to actually read—adverse benefit determinations." Mirza, 800 F.3d at 136.

[6] In support of its motion, Anthem submitted a single exhibit purporting to show that it complied with 29 C.F.R. § 2560.503-1(g)(1)(iv) for at least one of USC's claims. Specifically, a June 20, 2016 letter denying the first level appeal for Claim No. 2015310498503 appears to notify the claimant that he had sixty days to file a second level appeal. See Genovese Decl. Ex B. Anthem alleges that because USC did not file a second level appeal for this claim within sixty days, it must be dismissed. Reply at 10-11. However, on a motion to dismiss, the Court may only consider "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Because the June 20, 2016 letter is not attached to or referred to in the Complaint, and it is unclear whether USC filed a second level appeal for this claim, the Court declines to consider the exhibit at this time. See, e.g., Deblasio, 2014 WL 2919557, at *4 (on a motion to dismiss, declining to consider extraneous materials pertaining to plaintiff's failure to exhaust its ERISA claims).

asserts a benefits claim under Section 502(a)(1)(B).  Anthem also contends that the Complaint fails to plead a claim for equitable relief, which is the only relief available under Section 502(a)(3).  The Court disagrees.

For these arguments, Anthem relies primarily on Varity Corp. v. Howe, 516 U.S. 489, 515 (1996), in which the Supreme Court held that "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief [under § 1132(a)(3)] normally would not be 'appropriate.'"  So the argument goes, because Count III does not state a claim for equitable relief separate from the monetary relief demanded in Count II, the claims are duplicative and Count III must be dismissed.  See Reply at 13-14.  Somewhat similarly, Anthem maintains that Count III cannot stand because it insufficiently pleads a demand for equitable relief, the only relief available in a breach of fiduciary duty claim.  See Varity, 516 U.S. at 490 (noting that § 502(a)(3) is a "'catchall' provision[ ] . . . [that] act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy").

Courts in this district and elsewhere have held that because a plaintiff may plead in the alternative, dismissal of a breach of fiduciary duty claim as duplicative of a benefits claim is generally not appropriate on a motion to dismiss.  See Shah v. Aetna, No. 17-195, 2017 WL 2918943, at *2 (D.N.J. July 6, 2017) (collecting cases); see also New York State Psychiatric Ass'n, Inc. v. UnitedHealth Grp., 798 F.3d 125, 134 (2d Cir. 2015) (holding that at the motion to dismiss stage, it is "too early to tell if [plaintiff's] claims under § 502(a)(3) are in effect repackaged claims under § 502(a)(1)(B)"); Silva v. Metro. Life Ins. Co., 762 F.3d 711, 727 (8th Cir. 2014) (noting that "[a]t the motion to dismiss stage, . . . it is difficult for a court to discern the intricacies of the plaintiff's claims to determine if the claims are indeed duplicative, rather than alternative, and

9

determine if one or both could provide adequate relief"). At this early stage, the Court cannot state with certainty the precise nature of USC's injuries or the appropriateness of any particular remedy, and thus cannot determine whether its claim under Section 502(a)(3) is coterminous with its claim under Section 502(a)(1)(B). Shah, 2017 WL 2918943, at *2 (on a motion to dismiss, declining to dismiss as duplicative a breach of fiduciary duty claim that was drafted by the same law firm and is virtually identical to Count III here). Anthem may renew this challenge on summary judgment.

### E. Count IV: Violation of 29 C.F.R. 2560.503-1

Anthem argues that Count Four must be dismissed because 29 C.F.R. 2560.503-1 does not contain a private right of action. The Court agrees.

Courts in this district have held that neither Section 503 of ERISA, 29 U.S.C. § 1133, nor its accompanying regulation, 29 C.F.R. § 2560.503-1, create a private right of action. See Shah, 2017 WL 2918943, at *3 (collecting cases). USC nonetheless argues that it may maintain a claim under 29 C.F.R. 2560.503-1 for equitable relief, including "an Order that Defendants have not established and maintained claims procedures that comply with 29 C.F.R. 2560.503-1, and that as a result Plaintiff is deemed to have exhausted all required administrative remedies." Compl. at Count Four, Wherefore Clause, Subsection (a). Yet a plan administrator's failure to comply with 29 C.F.R. § 2560.503-1 merely shields the claimant from a finding that he or she failed to exhaust administrative remedies, and may be probative of whether a denial of benefits was arbitrary and capricious; it does not provide an independent cause of action. See, e.g., Shah, 2017 WL 2918943, at *3; Bloomfield Surgical Ctr. v. Cigna Health & Life Ins. Co., No. 16-8645, 2017 WL 2304642, at *3 (D.N.J. May 25, 2017); Shah v. Horizon Blue Cross Blue Shield, No. 16-2528, 2017 WL 680292, at *2 (D.N.J. Feb. 21, 2017). Count IV is therefore dismissed.

### F. Jury Trial Request

Lastly, Anthem maintains that USC's demand for a jury trial as to its ERISA claims should be stricken. USC does not address this argument in its response. The Court agrees with Defendant.

Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The Third Circuit has made clear that there is no right to a jury trial on ERISA claims, because the causes of action are equitable in nature. See Pane v. RCA Corp., 868 F.2d 631, 636 (3d Cir. 1989) (affirming district court's decision to strike request for a jury trial because ERISA claims under Sections 502(a)(3), 502(a)(1)(B), and 502(1)(1)(A) are equitable in nature); Boyles v. Am. Heritage Life Ins. Co., No. 15-274, 2016 WL 4031295, at *6 (W.D. Pa. July 26, 2016) (collecting cases and noting that "it is well-settled that a litigant filing a case pursuant to . . . ERISA is not entitled to a jury trial"). As USC's only remaining claims are brought pursuant to ERISA, its request for a jury trial will be stricken.

## IV. CONCLUSION

For the reasons set forth herein, the motion to dismiss is **GRANTED** in part and **DENIED** in part. An appropriate Order accompanies this Opinion.

**Dated: August 22, 2017**

          */s Madeline Cox Arleo*
          **Hon. Madeline Cox Arleo**
          **United States District Judge**